IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERISH BERGER,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **ELI WEINSTEIN, RAVINDER** | : | |
| **CHAWLA, 2040 MARKET** | : | |
| **ASSOCIATES, LP, JFK BLVD** | : | |
| **ACQUISITION PARTNERS, LP,** | : | |
| **MARK SAHAYA, PINE PROJECTS,** | : | |
| **LLC, WORLD ACQUISITION** | : | |
| **PARTNERS CORP.,** | : | NO. 07-994 |
| Defendants. | : | |

## MEMORANDUM & ORDER

**Schiller, J.**                                                                                                                 **July 24, 2008**

      Plaintiff Berish Berger brings the current action against Defendant Eli Weinstein and six other named defendants alleging, *inter alia*, that he was defrauded out of $36.5 million. On July 15, 2008, Defendant Weinstein, along with Defendant Pine Projects, a company of which Defendant Weinstein is part owner (together "Weinstein Defendants"), filed a motion "for disqualification of the Honorable Berle M. Schiller as the judge in this matter." (Defs.' Proposed Order.) The Weinstein Defendants allege that "the presiding Judge has shown a personal bias and prejudice against defendant Eli Weinstein," which mandates disqualification and reassignment to another judge on this Court. (Defs.' Mot. to Disqualify [hereinafter Defs.' Mot.] at 1, 7.) For the reasons discussed below, Defendants' motion is denied.

### I.    PROCEDURAL HISTORY

      A brief procedural history will inform the Court's legal conclusions. This action commenced

in March 2007. In his original Complaint, Plaintiff alleges that Weinstein, along with Defendant Ravinder Chawla, orchestrated a complicated scheme to induce Plaintiff to part with $36.5 million. Plaintiff alleges that Weinstein told him they would be investing in certain real estate properties together. However, according to Plaintiff's original averments, the real estate transactions were orchestrated to defraud Berger of his money without conveying legal title to any of the concerned properties. (*See generally* Document No. 1 (Complaint).)

On July 31, 2007, the case was reassigned from Judge Ludwig to this Court. (Document No. 58 (Reassignment Order).) By that time, Plaintiff had filed a First Amended Complaint, which added numerous averments and Defendants, including Pine Projects, World Acquisition Partners Corporation (a company controlled by Defendant Chawla), 2040 Market Associates, LP and JFK BLVD Acquisition Partners, L.P. (the title holders of the properties at issue), and Mark Sahaya, an independent real estate broker who allegedly aided Chawla and Weinstein's scheme.[1] (Document No. 13 (First Amended Complaint).) One week before the case was reassigned, Plaintiff filed a motion for a preliminary injunction. (Document No. 47 (Preliminary Injunction Motion).)

Following reassignment, the Court held a status conference, at which time the Court set up a schedule for expedited discovery and set a hearing date for Plaintiffs' Motion for Preliminary Injunction. The Court also denied all parties' motions to dismiss. (Document No. 76 (August 15, 2007 Order).)

Shortly before the preliminary injunction hearing, the Weinstein Defendants filed an emergency motion to stay proceedings and compel arbitration before a Jewish tribunal known as a

---

[1] The First Amended Complaint also included Anthony Argiropoulos, UBS Real Estate Securities, Inc., and Montgomery Abstract, all of which have subsequently been dismissed.

Beth Din. (Document No. 82.) Following oral argument on issue, the Court denied without prejudice the Weinstein Defendants' motion, on the grounds that there was no indication that the proper Beth Din had accepted jurisdiction or scheduled a hearing in this matter. (*See* Sept. 11, 2007 Tr. 141-42.) Before the Court's Order even appeared on the docket, the Weinstein Defendants filed an interlocutory appeal of the Court's ruling. (*See* Document No. 104 (Weinstein Defendants' Appeal); *see also* Document No. 109 (Court's Order on Weinstein Defendants' Motion to Stay).) The Third Circuit denied the appeal. (Document No. 157.)

On October 1, 2007, following a brief stay pending the appeal, the Court concluded three days of evidentiary hearings on Plaintiff's preliminary injunction motion. The Court determined that, based on the record before it, Plaintiff had shown a likelihood of success on his claim that Defendant Weinstein fraudulently induced Plaintiff to invest funds with him, and that Weinstein subsequently misappropriated Plaintiff's money. (Document No. 122 (Oct. 1, 2007 Preliminary Injunction).) The Court allowed additional discovery as to Defendant Weinstein's assets, as "Plaintiff's money went, at minimum, to four different investments . . . [and] Plaintiff's funds may have gone to [other] investments." (*Id.* ¶¶ 4-5.) The Weinstein Defendants appealed the Court's Preliminary Injunction Order. (*See* Document No. 131.) That appeal was subsequently voluntarily dismissed. (*See* App. Docket No. 07-4109, Feb. 25, 2008 Order.)

On January 14, 2008, in light of additional discovery, the Court held a show cause hearing as to why the Court should not broaden the preliminary injunction. Based on the evidence submitted by the parties at that time, the Court did not appoint a temporary receiver, as requested by Plaintiff. The Court did, however, confer upon Defendant Weinstein a "continuing obligation to notify the Court of any asset transfers from January 17, 2008 through the end of trial or other resolution of the

3

case." (Document No. 164 (Jan. 23, 2008 Order) ¶(2)(c).)

Shortly thereafter, the Court issued its scheduling order, which set a trial date of August 11, 2008. (Document No. 165 ¶ 10.)

At the close of discovery, Plaintiff filed his Second Amended Complaint.[2] The allegations of the Second Amended Complaint introduce new facts, apparently unfurled during discovery, concerning the disclosure, *vel non*, of a height ordinance affecting the some of the properties concerned in this litigation. It also introduced new averments concerning Defendant Sahaya's involvement in the alleged conspiracy. The new allegations were, in large part, aimed at the Chawla Defendants and Defendant Sahaya. (*See generally* Document No. 209 (Second Amended Complaint).)

On July 11, 2008, the Court ordered Defendant Weinstein to submit to the Court an updated list of his assets and transfers, in order to assure his compliance with the reporting obligations set forth in the January 23, 2008 Preliminary Injunction Order. (Document No. 263.) Five days later, Defendant Weinstein requested that the Court vacate the July 11, 2008 Order, and appealed it simultaneously (his third interlocutory appeal to date). (Document No. 269; Document No. 271). Weinstein also filed an emergency motion to stay enforcement of the Order with the Third Circuit and also with this Court. (Document No. 270.) Finally, Defendant also filed the instant motion to disqualify the Judge.

On July 16, 2008, the day after this flurry of motions, this Court denied the Defendant's

---

[2] The Second Amended Complaint was filed in response to a motion by Defendants Chawla and World Acquisition Partners Corporation (together "Chawla Defendants"). According to the Chawla Defendants, it because clear through the course of discovery that Plaintiff was pursuing a new theory of fraud against them, distinct from what was alleged in the First Amended Complaint. (*See* Document No. 199.)

motion to vacate the July 11, 2008 Order. The Court explained, in part:

> The Court imposed a reporting requirement so that the discovery gathered regarding Defendant Weinstein's expenditure of Plaintiff's investments was not modified to the point where it was no longer true. At the preliminary injunction hearing, the testimony and evidence was such that it was very hard to trace where Plaintiff's investments went once they were sent to Defendant Weinstein or his designees. The Court's reporting requirement was tailored to address this deficiency.

(Document No. 267 (July 16, 2008 Order) at 2 n.1.) Shortly thereafter, the Third Circuit denied Defendant Weinstein' emergency motion to stay the order. (Document No. 282.)

The Court now addresses the Weinstein Defendants' motion to disqualify the Judge.

## II.    DISCUSSION

### A.    The Law of Disqualification

The Weinstein Defendants bring their motion for disqualification pursuant to 28 U.S.C. § 455(a) and (b)(1), which respectively state: "(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself . . . where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Section 455(a) is a "catchall disqualification provision" which instructs a judge to disqualify himself in circumstances where "a reasonable person, with knowledge of all of the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003) (*citing Edelstein v. Wilentz*, 812 F.2d 128 (3d. Cir. 1987)); *see also In re Kensington Int'l Ltd.*, 368 F.3d 298, 303 (3d Cir. 2004) ("[T]he appearance of impropriety must

be viewed from the perspective of the objective, reasonable layperson."); *In re Linerboard Antitrust Litig.*, Civ. A. Nos. 98-5055 & 99-1341, 2008 WL 2758167, at *6 (E.D. Pa. July 14, 2008). Because Section 455(a) is concerned with maintaining the public's confidence in the judiciary, "it is of no consequence that the judge is not *actually* biased*." In re Kensington*, 353 F.3d at 220; *see also Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) (Section 455 concerns public confidence); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 98 (3d Cir. 1992) ("the polestar [of the Court's inquiry] is impartiality and the appearance of impartiality.").

Section 455(b)(1) is more narrowly prescribed to require disqualification in those circumstances where a judge has demonstrated "bias or prejudice," or "personal knowledge" of disputed facts. *See In re Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6. Disqualification under Section 455(b)(1) is also evaluated under an objective standard of impartiality. *Liteky v. United States*, 510 U.S. 540, 548 (1994).

The most common basis for disqualification under Section 455(a) or (b)(1) is "'an alleged bias and prejudice . . . [that] stem[s] from an extrajudicial source,'" that is, a source outside the judicial proceeding. *Liteky*, 510 U.S. at 544, 551 (*citing United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also In re Linerboard Antitrust Litig.*, 2008 WL 2758167, at *6. Bias or prejudice which results from evidence presented in court or in the course of judicial proceedings may also constitute a basis for disqualification; however, in those cases, a Judge must display "a deep-seated favoritism or antagonism that would make a fair judgement impossible." *Id.* at 555; *see also id.* at 551 (judge's disposition must be "so extreme as to display clear inability to render a fair judgment"). The example given by the Supreme Court of a statement containing "unequivocal antagonism" was one allegedly uttered by the district court judge in *Berger v. United States*, 255

U.S. 22 (1921): "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans," because their "hearts are reeking with disloyalty." *Liteky*, 501 U.S at 555 (*citing Berger*, 255 U.S. at 28). Judicial rulings alone "almost never" constitute a basis for disqualification. *Id.* at 555.

### B. Weinstein Defendants' Allegations

In light of these standards, the Court will address the Weinstein Defendants' allegations seriatim.

#### 1. The Preliminary Injunction

The Weinstein Defendants point to the following passages from the Court's Preliminary Injunction opinion in an attempt to prove bias:

> Defendant has shown a lackadaisical attitude with Plaintiff's funds which shocks the conscience. These are just a few examples of the many ways in which Defendant Weinstein fraudulently induced Plaintiff to invest money with him, and then recklessly squandered Plaintiff's funds."[3] (Document No. 164 at 15.)

---

[3] The language preceding that passage gives context to the Court's statements:

> Plaintiff has shown a likelihood of success on the merits of his fraudulent misrepresentation claim against Defendant Weinstein. Weinstein clearly represented to Plaintiff that his funds would be used for the purchase of and to fund expenses related to two properties – 2040 Market Street and the JFK Properties. Relying on that representation, Plaintiff ultimately agreed to give Weinstein $36.5 million. While $12 million of Plaintiff's funds were actually used in the purchase of the JFK properties, the only funds which did not first pass through Weinstein's hands because they went directly to a title company, none of Plaintiff's other funds actually went to the purchase of either property. Plaintiff's funds were commingled with those of Pine Projects and then used to satisfy other obligations and debts of Defendant Weinstein.
> Furthermore, Weinstein claims to have invested over $15 million on behalf of Plaintiff in properties that were not part of

> . . . .
>
> In light of the apparent dishonesty and deceit with which Defendant conducted himself – from his initial interactions with Plaintiff through the time of the hearings – it was and continues to be unjust for Defendant Weinstein to profit from Plaintiff's investments. (*Id.* at 17.)

In ruling on a motion for a preliminary injunction, a court both finds facts and determines the law. *See* FED. R. CIV. P. 52(a)(1) & (2). In its fact-finding capacity, at an evidentiary hearing, a court may make credibility determinations as to the witnesses' testimony and the evidence presented during the hearing. *See, e.g., Hudson Global Resources Holdings, Inc. v. Hill*, Civ. A. No. 07-132, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007) ("A court considering whether to grant a preliminary injunction may assess the credibility of witnesses testifying before it at a preliminary injunction hearing, and base its decisions on credibility determinations."). Based on the record before it, which was compiled after three days of evidentiary hearings, the Court concluded that Plaintiff made a preliminary showing that he was likely to succeed on his fraud and unjust enrichment claims against Defendant Weinstein. In fulfilling its judicial obligation, the Court carefully considered the evidence presented at the hearings, and made certain credibility determinations based on the evidence, testimony and the demeanor of the witnesses. In light of the Court's role at that stage of the proceedings, the language used by the Court, although perhaps strict,

---

their original agreement, namely 900 Delaware Avenue and 101 West Avenue. Weinstein did so without ever telling Plaintiff about these investments. Plaintiff had to commence a lawsuit to get information about how his money had been invested. This could be in part because of the troubling fact that Weinstein did not keep contemporaneous records of how he was investing Plaintiff's money.

(Jan. 23, 2008 Op. at 15.)

8

does not objectively "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also id.* at 551 (opinions acquired during the course of proceedings which are "necessary to completion of the judge's task" not grounds for disqualification). Indeed, "'if the judge did not form judgment of the actors in those court-house dramas called trials, he could never render decisions.'" *Id.* at 551 (*citing In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)).

The Weinstein Defendants also argue that "no evidence was presented at the hearings that Weinstein was required to take specific funds sent on Berger's behalf and immediately invest them in the JFK or 2040 projects." (Defs.' Mot. at 2.) In other words, Defendants are challenging the merits of the Court's ruling. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Litiky*, 510 U.S. at 555 (*citing Grinnell Corp.*, 384 U.S. at 583)). "Almost invariably, [judicial rulings] are proper grounds for appeal, not for recusal." *Id.*; *see also Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) ("a party's displeasure with legal rulings does not form an adequate basis for recusal."); *In re Linerboard Antitrust Litig.*, 2008 WL 2758167, at *10 ("To the extent that [plaintiff] disagrees with the legal bases for the Court's rulings, he may appeal to the Third Circuit."). The Weinstein Defendants, in fact, filed an interlocutory appeal of the Preliminary Injunction Order, but subsequently dismissed that appeal. They cannot now complain of the preliminary injunction under the guise of judicial disqualification.

        2.     *Defendant Weinstein's "Dilatory Tactics"*

Next, the Weinstein Defendants point to a passage from this Court's June 26, 2008 Severance

Order:[4]

> [I]t is not lost on this Court that since receiving this case almost one year ago from Judge Ludwig, Defendant Weinstein has consistently attempted to delay these proceedings. The Court will not allow such dilatory tactics. There are seven other parties to this action who deserve expeditious resolution of their claims and those claims against them.

This, again, does not meet the exacting standard required for a bias or partiality disqualification. "*Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger." *Liteky*, 510 U.S. at 555-56 (emphasis in original). Nonetheless, the Court will provide a brief explanation of its comments.

Defendant Weinstein has, over the course of these proceedings, continually erected roadblocks to the adjudication of this matter. For example, Defendant Weinstein is on his third uncertified interlocutory appeal in less than one year. The first appeal, of this Court's refusal to compel arbitration before a Beth Din, was denied. The second appeal, of this Court's preliminary injunction order, was voluntarily dismissed. The third appeal, of the July 11, 2008 Order requiring Weinstein to demonstrate his compliance with the preliminary injunction order, is currently pending. Defendant Weinstein's emergency motion to stay the July 11, 2008 Order was denied.

Furthermore, following the close of discovery, the Weinstein Defendants have failed to adhere to the Court's Scheduling Order. Defendants filed a motion to dismiss ten days before summary judgment motions were due, and filed a motion for summary judgment nine days after that deadline had passed (without requesting timely leave for an extension at the time dispositive motions were due). The Weinstein Defendants filed a third-party Complaint nine days after summary

---

[4] In that Order, the Court severed the Weinstein Defendants' third-party Complaint. (Document No. 236.)

judgment was due, and then filed another motion for summary judgment twenty-nine days after summary judgment motions were due.[5]

Finally, it is worth briefly discussing Defendant Weinstein's request for a continuance of the trial. This matter has seen the involvement of many attorneys. Defendant Weinstein alone has been represented by five law firms and thirteen lawyers.[6] Although Schnader, Harrison, Segal & Lewis took on Defendant Weinstein's representation in mid-October 2007, Ms. Elizabeth Ainsley did not take over as lead counsel until May 2008, over a year after the commencement of this action and only months before trial. Simultaneous with the entry of her appearance, Ms. Ainsley requested to continue the trial for personal reasons. Putting aside that the next available trial date was seven months after the currently-scheduled August date, the Court denied Ms. Ainsley's request with due consideration to the twenty-two other attorneys and ten parties involved in the case at that time, who had all modified their schedules accordingly five months before Ms. Ainsley's request.[7]

The Weinstein Defendants go on to argue that "plaintiff has actually done far more to delay

---

[5] The Weinstein Defendants cite Federal Rule of Civil Procedure 56(a)(1) to justify their belated submission, arguing that they could not file a motion for summary judgment until 20 days after they amended their cross-claims. Rule 56 states: "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of a claim. The motion may be filed at any time after . . . 20 days have passed *from the commencement of the action*." FED. R. CIV. P. 56(a)(1) (emphasis added). Plaintiff commenced this action on March 13, 2007. Defendant's second motion for summary judgment, filed July 15, 2008, certainly could have been filed earlier without being prematurely deficient. *See, e.g., Katz v. AIWA America, Inc.*, 818 F. Supp. 730, 735 n.3 (D.N.J. 1993).

[6] Defendant Weinstein has been represented by Wachtel Masyr LLP; Fox Rothchild LLP; Wolf, Block, Schorr & Solis-Cohen LLP; Hangley, Aronchick, Segal, & Pudlin LLP; and Schnader, Harrison, Segal & Lewis LLP.

[7] Moving back the trial by a number of weeks, as Ms. Ainsley requested, also ran the risk of interfering with the Jewish holidays, of particular importance where many of the parties and witnesses, including Ms. Ainsley's client, practice Orthodox Judaism.

these proceedings than has Weinstein has [sic]," and to describe a number of discovery disputes and time extensions, the vast majority of which were never issues raised with the Court. (*See also* Defs.' Mot. at 5 ("At the same time he denied Defendant Weinstein's request for a modest extension of the trial date, the Judge granted Plaintiff's last-minute, oral request for an extension of his expert report deadline, despite plaintiff's failure even to articulate a reason for the extension request.").) The Court will not, post hoc, engage in this child's game of blame. Suffice it to say that when issues regarding extensions of time were addressed to the Court, the Court has been equally resolute in not continuing the trial date. (*See* Document No. 207 (Order denying Weinstein Defendants' motion to continue trial); Document No. 210 (Order denying Chawla Defendants' motion to modify the scheduling order)). However, the Court has been amenable to certain delays in the filing of dispositive motions. In fact, contrary to Defendants' generalizations, some of the Court's rulings have benefitted the Weinstein Defendants, (*see* Document No. 236 (Order granting Weinstein Defendants leave to file overdue motion for summary judgment), and disfavored Plaintiff, (*see* Document No. 238 (Order denying Plaintiff's motion for extension of time to file response to summary judgment)).

Perhaps the Weinstein Defendants misread the Court's resolve to efficiently adjudicate this case as bias. The Court assures Weinstein, and the rest of the parties, that this is not the case. The Court is simply acting out of a judicious desire to litigate the rights of the parties to this action.

       3.     *Defendants' Motion to Dismiss*

Defendants next argue that the Court should disqualify itself because it denied their motion to dismiss. Again, legal rulings are rarely a valid basis for disqualification. *Litiky*, 510 U.S. at 555. The Court denied the Weinstein Defendants' motion to dismiss because it was superfluous of issues

that were to be resolved on motions for summary judgment, due ten days after Defendants' motion. The Court similarly denied every other motion to dismiss filed in this case. (*See* Document No. 76). This is not an adequate basis for disqualification or even evidence of prejudice or bias.

    4.    *July 11, 2008 Order*

Defendants next argue that the Court displayed bias when it "required Weinstein to report any asset transfers, despite the fact that selling real property is at the core of Weinstein's business." The July 11, 2008 Order at issue required Defendant Weinstein to "submit to the Court a list of his currently held assets" including "any assets which have been transferred, either voluntarily or involuntarily, since January 17, 2008." (Document No. 263.) Pursuant to the Preliminary Injunction Order dated January 23, 2008, "Defendant Weinstein is under a *continuing obligation* to notify the Court of any asset transfers from the January 17, 2008 through the end of trial or other resolution of the case." (Document No. 164) (emphasis added).

The Court has previously addressed the propriety of its July 11, 2008 Order, and will not reiterate its previous rulings. (*See* Document No. 276 (July 16, 2008 Order n.1).) The Court's enforcement of Defendant Weinstein's obligations under the Preliminary Injunction Order, again, is not evidence of partiality or bias and certainly is not evidence of "unequivocal antagonism." *Litiky*, 510 U.S. at 556. Defendants were entitled to appeal the preliminary injunction, which they did, and then dismissed.

    5.    *The Presence of Equitable Claims*

In a closing footnote, Defendants argue that the Court's obligation to disqualify itself is heightened by the presence of equitable claims, which will be decided by the Court. (Defs.' Mot. at 7 n.*.) As discussed above, there is no appearance of bias or partiality which mandates

disqualification. The Court further notes, however, that this Court will only resolve Plaintiff's equitable claims at the conclusion of a jury trial on Plaintiff's legal claims. In deciding Plaintiff's equitable claims, the Court is bound by the jury's earlier findings. *Kemether v. Pa. Interscholastic Athletic Ass'n*, Civ. A. No. 96-6986, 1999 WL 1012948, at *17 (E.D. Pa. Nov. 8, 1999); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1483 (3d Cir. 1990) ("[I]n all issues which are common to a claim tried simultaneously to the bench and to a jury, the court is bound by the jury's findings."). Furthermore, the findings of fact and credibility determinations made in furtherance of the Preliminary Injunction Order play no role at the summary judgment stage or at a trial on the merits. *See St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of Virgin Islands,* 357 F.3d 297, 301 (3d Cir. 2004) (findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on merits); *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056 (3d Cir. 1991) (credibility determinations made during preliminary injunction ruling inapposite to summary judgment ruling). Accordingly, the Weinstein Defendants' concerns are misguided.

      6.    *Extrajudicial Sources*

In conjunction with its argument that the Court acted out of bias in issuing its July 11, 2008 Order regarding Defendant Weinstein's asset list, *see supra* Part II.A.4., the Weinstein Defendants allege that the Court acted "on the basis of information that the Judge obtained through some *ex parte* source." (Defs.' Mot. at 6.) Defendants have submitted no evidence of *ex parte* communications. Indeed, Defendants could not submit such evidence, because none exists. To be absolutely explicit, this Court has not participated in any *ex parte* conversations. The Court does not take such allegations lightly, and is troubled by this assertion by Weinstein's counsel. The Court

14

may, at a future date, follow up on these allegations. *See Conklin v. Warrington Twp*, 476 F. Supp. 2d 458, 464-66 (M.D. Pa. 2007) (referral to disciplinary body not grounds for recusal).

**III.     CONCLUSION**

Upon review of all of the rulings, opinions, and practices of the Court over the course of these proceedings, the Court concludes that there is no evidence of a "deep-seated and unequivocal antagonism that would render fair judgment impossible," or indeed, any antagonism or partiality whatsoever. *See also Conklin*, 476 F. Supp. 2d at 463 ("[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.") (internal citations omitted). Accordingly, the Court will not disqualify itself from this matter. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERISH BERGER,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **ELI WEINSTEIN, RAVINDER** | : | |
| **CHAWLA, 2040 MARKET** | : | |
| **ASSOCIATES, LP, JFK BLVD** | : | |
| **ACQUISITION PARTNERS, LP,** | : | |
| **MARK SAHAYA, PINE PROJECTS,** | : | |
| **LLC, WORLD ACQUISITION** | : | |
| **PARTNERS CORP.,** | : | **NO. 07-994** |
| Defendants. | : | |

## ORDER

**AND NOW**, this **24th** day of **July**, **2008**, upon consideration of Defendants Weinstein and Pine Projects' Motion to Disqualify Judge (Document No. 272), Plaintiff's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that the motion is **DENIED.**

BY THE COURT:

*/s/ Berle M. Schiller*
**Berle M. Schiller, J.**