IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERISH BERGER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELI WEINSTEIN, RAVINDER | : | |
| CHAWLA, 2040 MARKET | : | |
| ASSOCIATES, LP, JFK BLVD | : | |
| ACQUISITION PARTNERS, LP, UBS | : | |
| REAL ESTATE SECURITIES, INC., | : | |
| MARK SAHAYA, PINE PROJECTS, | : | |
| LLC, MONTGOMERY ABSTRACT, | : | |
| WORLD ACQUISITION PARTNERS | : | |
| CORP., | : | No. 07-994 |
|     Defendants. | : | |

**MEMORANDUM & ORDER**

**Schiller, J.**                                                                                                                      **August 6, 2008**

      Plaintiff Berish Berger brings the current action against multiple defendants, raising allegations of fraud, conversion, civil conspiracy, promissory estoppel, unjust enrichment, and seeking declaratory judgment. Each Defendant has moved for summary judgment. For the reasons discussed below, Defendants' motions for summary judgment are granted. Because the issue of standing is dispositive, the Court will not address Defendants' arguments as to the merits of Plaintiff's claims.

**I.    BACKGROUND**

      **A.    The Parties & Plaintiff's Claims**

      This is a factually complicated matter, with an equally intricate procedural history. Because the Court's legal analysis revolves around standing, a cursory overview of Plaintiff's substantive

allegations should suffice.

Plaintiff Berish Berger is a British real estate investor.  In November 2006, Berger was introduced to Defendant Eli Weinstein, a real estate investor located in Lakewood, New Jersey. (Pl.'s Counter Statement of Facts ¶ 38.)  Weinstein, among others, was involved in certain investments in Philadelphia, including "The River City Properties," – 8.2 acres of land with a proposal for a 12 million square foot development – and a commercial building located at 2040 Market Street.  (*Id.* ¶¶ 2, 38, 14.)

Based on Weinstein's representations, and the representations made by developers at a December 2006 presentation, Berger decided to invest in these two properties.  Over the course of December 2006 and January 2007, Berger sent $36.5 million to be invested in the properties.  (*See* ¶ 101, 107.)

Subsequent to these investments, a panoply of problems arose.  First, according to Plaintiff, with the exception of $12 million, which was wired directly to a title company, Defendant Weinstein misappropriated Plaintiff's money.  (*See Id.* ¶ 79.)  Additionally, Plaintiff alleges that Weinstein fabricated checks and documents in an attempt to demonstrate that he had invested Plaintiff's money in the respective properties.  (*Id.* ¶¶ 82-93.)

Further, according to Plaintiff, numerous defendants made multiple misrepresentations to Plaintiff in order to induce his investments.  For example, Defendant Chawla, whose special purpose entities owned the properties at issue with the intention of "flipping" them, concealed a height ordinance on the River City Properties which prevented the proposed development.[1]  (*Id.* ¶¶1-8, 18-

---

[1] These special purpose entities are Defendants JFK BLVD Acquisition Partners and 2040 Market Associates LP.

25, 41-51.) Moreover, according to Plaintiff, Weinstein represented to him that the sale of air rights over the 2040 Market Street properties was "imminent," and would yield an immediate profit on their investment; this representation, which again was supported by false documentation, was also untrue. (*Id.* ¶¶ 64-79.)

These are only a few of the factual allegations underlying Plaintiff's claims. In addition to the Defendants listed above, Plaintiff has raised claims against Mark Sahaya, a real estate broker who allegedly conspired with Defendants Weinstein and Chawla to defraud Plaintiff of his funds. Additionally, Pine Projects and World Acquisition Partners, companies respectively affiliated with Defendants Weinstein and Chawla, are named Defendants.

      B.      **Facts Relating to Standing**

The $36.5 million that Berger claims were misappropriated by Defendants were not wired from his personal accounts. Rather, Berger arranged for payments to be made from five different corporate entities: (1) On December 18, 2006, Kilbride Investments Limited ("Kilbride") wired $12 million to Montgomery Abstract;[2] (2) on December 19, 2006, Busystore Limited ("Busystore") wired $9.5 million to Pine Projects; (3) on January 8, 2007, Towerstates Limited ("Towerstates") wired $4 million to Pine Projects; (4) on January 8, 2007, Ardenlink Limited ("Ardenlink") wired $6 million to Pine Projects; (5) on January 19, 2007, Bergfield Company Limited ("Bergfield") wired $5 million to Pine Projects. (Defs.' Chawla and World Acquisition Partners [hereinafter Chawla Defs.] Mot. for Summ. J. Ex. V (Company Wires).)

---

[2] Montgomery Abstract, a title company, was formerly a Defendant in this action, but was dismissed as a party when Plaintiff filed his Second Amended Complaint. It received $12 million for investment into the River City Properties. Those funds were, in fact, used at the closing on those properties.

3

Berger's relationships with these companies varies. Berger has no relationship at all with Kilbride. (Sept. 10, 2007 Tr. at 63; Sept. 5, 2007 Berger Dep. at 333.) Berger is one of multiple directors of Busystore, Ardenlink and Bergfield. (*See* Chawla Defs.' Mot. for Summ. J. Ex AA (Bergfield Annual Return) & Ex. BB (Busystore Annual Return) & Ex. CC (Ardenlink Annual Return)). Berger is a director and one percent shareholder of Towerstates. (*Id.* Ex. Z (Towerstates Annual Return).)

The record reflects that Bergfeld is entirely owned by a company named Tripform, and Busystore is entirely owned by a company named Astralmain. Berger "guesses" that both Tripform and Astralmain are entirely owned by his family. (*See Id.* Ex. D-3 [hereinafter May 14, 2008 Berger Dep.] at 32, 44.) Ardenlink is a charitable corporation and therefore has no shareholders. It is unclear from the record who owns Kilbride.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all

inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.  DISCUSSION

#### A.  The Law of Constitutional Standing[3]

Article III of the Constitution requires the following "irreducible constitutional minimum of standing": upon coming to federal court, a plaintiff must have suffered an "injury in fact"; which is fairly traceable to the defendant's challenged behavior; and likely to be redressable by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Constitutional standing is a matter of jurisdiction. *See Id.*, 504 U.S. at 560; *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (constitutional standing "determin[es] the power of the court to entertain suit."); *United States v. Hayes*, 515 U.S. 737, 742 (1995) ("[S]tanding is perhaps the most important of the jurisdictional doctrines.") (internal quotations omitted). Because this is true, a plaintiff's injury "must exist from the commencement of litigation," *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), and "must be existent at all stages of review." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Further, standing cannot be waived. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).

---

[3] The standing analysis actually involves both constitutional and prudential limitations on standing. *See Fair Housing Counsel of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 74 (3d Cir. 1998). Because the constitutional limitations of standing have not been met, the Court need not engage in a prudential standing analysis.

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Threatened, rather than actual, injuries may satisfy Article III standing requirements where such injury is "real, immediate, and direct," *Davis v. Federal Election Com'n*, 128 S. Ct. 2759, 2769 (2008) (*citing Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), and not "too remote temporally." *McConnell v. Federal Election Com'n*, 540 U.S. 93, 226 (2003). The purpose of the injury requirement is to "distinguish a person with a direct stake in the outcome of a litigation – even though small – from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973).

Plaintiff bears the burden of establishing an injury in fact. *Lujan*, 504 U.S. at 561; *Public Interest Research Group v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Such an injury must be shown "in the same way as any other matter in which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561. Because Defendants' challenge comes at the summary judgment stage, Plaintiff must "set forth by affidavit or other evidence specific facts" which, taken as true, are sufficient to establish standing. *Id.* (internal citations omitted).

Because the Court finds that Plaintiff has not established an injury in fact, the Court does not need to address the causation or redressability prongs of standing.

**B.     Plaintiff Has Not Established Article III Standing**

In response to Defendants' motions for summary judgment, Plaintiff argues that constitutional standing exists because the funds wired by the companies were sent "on behalf of" Berger, and therefore constituted loans to Berger for which he is personally liable. For the reasons discussed below, Plaintiff has not met his burden of proving that such loans exist or, even if those

loans did exist, that repayment was required with any imminence.[4]

>    1.    Plaintiff has Not Demonstrated that the Money Transfers were "Loans" to Berger

Although Plaintiff has represented that the funds at issue were loaned by the companies to him, the record clearly demonstrates otherwise. *See Anderson v. Liberty Lobby*, 477 U.S. 242 , 251-52 (1986) (summary judgment appropriate where evidence is "so one-sided that one party must prevail as a matter of law.")

First, the money never passed through Plaintiff's hands.  Rather the money was directly wired from the companies to Pine Projects or, in the case of Kilbride, to Montgomery Abstract. Moreover, there are no documents memorializing the transfers as funds first being loaned to Berger,

---

[4] In response to Defendants' motion for summary judgment on the standing issue, Plaintiff additionally produced Assignment Agreements from each of the five companies, dated June 20, 2008 (eight days before Plaintiff filed his response to summary judgment), which "absolutely and unconditionally assign to Berger the entirety of whatever claims and causes of action it may have against any and all of the defendants in the Litigation arising from the facts and circumstances alleged in the Second Amended Complaint."  (Berger Decl. Ex. D (Kilbride Assignment) ¶ 1 & Ex. E (Bergfield Assignment) ¶ 1 & Ex. F (Busystore, Towerstates, and Ardenlink Assignments) ¶ 1.)  A party may assign his legal stake in any litigation to an assignee. *See Sprint Communications Co. LP v. APCC Services, Inc.*, 128 S. Ct. 2531 (2008). Nonetheless, an assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing "must exist from the commencement of litigation." *Friends of the Earth*, 528 U.S. at 190 (internal citations omitted).
    Recognizing this deficiency, at oral argument, Plaintiff admitted that the assignments were insufficient to satisfy constitutional standing requirements.  (July 31, 2008 Tr. at 62 ("The Court: But you'll concede that after-the-fact assignments don't confer Article [III] standing?  Mr. Seltzer: I concede that.").)  Accordingly, the companies' assignments cannot satisfy Article III standing.
    Plaintiff also half-heartedly argues that Defendants waived their right to assert standing by not raising the argument earlier.  (Pl.'s Response to Chawla Defs.' Mot. for Summ J. at 41.) Not only have Defendants raised the issue of standing previously, (*see e.g.* Chawla Defs.' Answer to First Amended Compl. Affirmative Def. No. Sixteen; Sept 10, 2007 Tr. at 67), but standing "is jurisdictional and not subject to waiver." *Lewis*, 518 U.S. at 349 n.1.  Accordingly, this argument fails.

and then being invested on his behalf. There are no documents reflecting a request for the loans; there are no corporate documents authorizing or ratifying the loans; there are no documents reflecting Berger's obligation to repay the money. (*See* Document No. 215 (June 2, 2008 Order).)[5] At least one company, Towerstates, indicated in its independently audited financial statement that there was a "fundamental uncertainty" surrounding the funds and, should those funds prove unrecoverable, Towerstates "would have a loss for the year"; this is an unlikely conclusion if Berger were personally liable for those loans.[6] (Chawla Defs.' Mot. for Summ. J. Ex. EE (Towerstates Annual Report) at 3,6.)

Indeed, Berger's own testimony is most demonstrative. Berger testified that he does not know the terms of the loans. Berger does not know if there are interest rates on the loans. (*See* May 14, 2008 Berger Dep. at 65; *see also* Sept. 11, 2007 Tr. at 66.) Berger does not know how he would

---

[5] On June 2, 2008, following a conference with the parties, the Court ordered Plaintiff to produce:
> (a) All documents reflecting Plaintiff's request for funds from third-party entities relating to the transactions at issue in the current action.
> (b) All documents reflecting an authorization to release funds to Plaintiff for use in any transactions at issue in the current action.
> (c) All documents reflecting Plaintiff's obligation to repay funds to a third-party entity relating to the transactions at issue in the current action."

(June 2, 2008 Order)
It became clear at oral argument that, in response to the Court's Order, Plaintiff represented that such documentation did not exist. (July 30, 2008 Tr. at 66, 77; *see also* Weinstein Defs.' Mot. for Summ. J. Ex. T (June 9, 2008 Braff Letter) ("I am writing pursuant to the Court's order, dated June 2, 2008, to inform you and counsel for all the other parties that plaintiff conducted a diligent search for documents responsive to the Court's order and did not find any such documents.")).

[6] Berger believes his assets to be worth over $100 million. (Chawla Defs.' Mot. for Summ. J. Ex. D-2 [hereinafter Sept. 5, 2007 Berger Dep.] at 31.

find out if there were interest rates on the loans. (May 14, 2008 Berger Dep. at 65.) Berger does not know if there is a due date on the loans. (*Id.* at 66.) Berger has not repaid any amount of any loan well over one year past initiation. (*Id.* at 68.) The fact that Berger characterizes the funds as "loans" to him for which he is "personally liable" is of no consequence, when there is no indication when or if those funds will ever be due.

Further, and most importantly, at least three of these companies – Ardenlink, Towerstates, and Bergfield – in their annual financial statements did not account for the transfers as loans to Berger. In a memorandum dated July 24, 2008 to Plaintiff from accountant Mark Hepplewhite, Hepplewhite informs that, in the accounting records for each of these three companies, the respective funds were treated as "advances" made to Pine Projects, and were "accounted for" as having been made on behalf of Busystore Limited. (*See* July 24, 2008 Memorandum; *see also* Chawla Defs.' Mot. for Summ. J. Ex. EE at 3, 6). Nowhere does it state that the Companies are treating these funds as loans to Plaintiff for which he is personally liable.

Based on the entirely one-sided record, Berger's self-serving statements are insufficient to establish that the companies were treating the funds forwarded to Pine Projects and Montgomery Abstract as loans to Berger. Accordingly, because Plaintiff cannot establish that the corporate entities loaned him the funds at issue in this litigation, those "loans" cannot serve as the basis for Plaintiff's standing. *See, e.g., West v. Health Net of the Northeast*, 217 F.R.D. 163, 173 (D.N.J. 2003) (plaintiffs not entitled to reimbursement of funds made on their behalf, where plaintiffs themselves did not expend such funds).

> 2. *Plaintiff has not shown that repayment to any of the five companies is "certainly impending"*

Even if Plaintiff had demonstrated that he received "loans" from these companies, he has not shown that repayment of these undocumented, yet-unpaid, interest-free loans, is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (internal quotations omitted.); *see also Davis,* 128 S. Ct at 2769 (threatened injury must be "real, immediate, and direct"); *Lujan,* 504 U.S. at 564 & 264 n.2 ("some day" injuries and injuries occurring at "some indefinite point in the future" are insufficient to establish imminence requirement of threatened injury in fact). Berger's testimony indicates only that "he does not know the date of repayment."[7] (May 14, 2008 Berger Dep. at 68.) Plaintiff's debt may be due tomorrow; it may never be due. Without any indication in the record that Plaintiff's loan comes due on a particular date, or even a particular year, and without any indication that the companies actually intend to collect on the outstanding debts, Plaintiff's alleged debt is "too remote temporally" for the Court to conclude that Plaintiff has shown an injury in fact. *McConnell*, 540 U.S. at 226; *see also Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318 (D. Utah 2005) (where Defendant never attempted to collect on a debt, Plaintiff had not established injury in fact for standing analysis).

Accordingly, Plaintiff has not established standing to prosecute his claims.

---

[7] Notwithstanding his statements that "his little world has been turned upside down" and that "constant discussions" with the trustees of Kilbride as to the repayment of the loans, there is simply no indication in the record of when these loans will come due. (*See* Berger Dep. at 66-67.)

**IV.     CONCLUSION**[8]

The Court specifically does not comment on whether the assignments obtained by Plaintiff would be sufficient to confer standing if Plaintiff re-filed his claims, which, cursorily, do not appear to be outside the window of their statute of limitations.

Because Plaintiff does not have standing to prosecute his claims against any of the Defendants, each Defendant's motion for summary judgment will be granted.  An appropriate Order follows.

---

[8] In a last-ditch effort to establish standing, at oral argument, Plaintiff argued that he has standing as a shareholder in the corporations.  The evidence in the record indicates that Plaintiff is a one per cent shareholder Towerstates, which gave $4 million to Pine Projects in January 2008.  While a shareholder plaintiff in a closely held corporation may have constitutional standing to sue, *see, e.g., Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992), Plaintiff has not pleaded or fashioned his theory of the case as either a direct or derivative shareholder action.  Eleventh-hour assignments do not remedy this fact and the Court will not allow Plaintiff to amend his theory of the case subsequent to summary judgment filings.  Further, the Court notes that the funds offered by Towerstates are so inextricably tied to the other funds at issue in this litigation, that it would defy common sense to allow Plaintiff to prosecute the Towerstates funds separately from the funds attributable to other corporations.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERISH BERGER,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **ELI WEINSTEIN, RAVINDER** | : | |
| **CHAWLA, 2040 MARKET** | : | |
| **ASSOCIATES, LP, JFK BLVD** | : | |
| **ACQUISITION PARTNERS, LP, UBS** | : | |
| **REAL ESTATE SECURITIES, INC.,** | : | |
| **MARK SAHAYA, PINE PROJECTS,** | : | |
| **LLC, MONTGOMERY ABSTRACT,** | : | |
| **WORLD ACQUISITION PARTNERS** | : | |
| **CORP.,** | : | **No. 07-994** |
| Defendants. | : | |

**ORDER**

**AND NOW**, this **6th** day of **August**, **2008**, upon consideration of the following motions, responses thereto, and for the reasons discussed above, it is hereby **ORDERED** that:

1. Defendants Chawla and World Acquisition Partners' Motion for Summary Judgment (Document No. 223) is **GRANTED**.

2. JFK BLVD Acquisition Partners LP and 2040 Market Associates LP's Motion for Summary Judgment (Document No. 224) is **GRANTED**.

3. Defendant Sahaya's Motion for Summary Judgment (Document No. 225) is **GRANTED**.

4. Defendant Weinstein and Pine Projects' Motion for Summary Judgment (Document No. 235) is **GRANTED**.

5. All of Plaintiff's claims against all defendants are hereby **DISMISSED**.

6. Because no claims remain against Defendant Mark Sahaya, he is **DISMISSED** from this action. The remaining parties are prosecuting or are the subject of cross-claims and therefore remain parties to this action.

7. The Clerk of Court is directed *not* to close this case, so that the Court may resolve the parties' outstanding cross-claims.

8. All other outstanding motions remain under advisement and will be resolved expeditiously.

9. As Plaintiff's claims, which were the basis of this Court's preliminary injunction, have been dismissed, this Courts' October 1, 2007 and January 23, 2008 Preliminary Injunction Orders are hereby **VACATED**.

10. The trial date of Monday, August 11, 2008, established in this Court's January 23, 2008 Scheduling Order, is hereby **VACATED.**

11. The Weinstein Defendants' Motion in Limine to Preclude the Introduction of Evidence or Argument at Trial Relating to the Height Ordinance or PK Ram Letters (Document No. 240) is hereby **DENIED without prejudice**.[9]

12. Plaintiff's Motion in Limine to Preclude Evidence Regarding the Proposed Sale of River City to ARC Properties, Inc (Document No. 299) is **DENIED without prejudice**.

13. Plaintiff's Motion in Limine to Preclude Evidence Regarding Berger's Lack of Due Diligence (Document No. 300) is **DENIED without prejudice**.

---

[9] The parties motions in limine will be denied without prejudice, and may be reraised if the underlying claims proceed to trial.

14. The Chawla Defendants' Motion in Limine to Preclude Any Assertion or Argument By Eli Weinstein or Pine Projects That They Hold an Ownership Interest in the JFK or 2040 Market Properties (Document No. 306) is **DENIED without prejudice**.

15. The Weinstein Defendants' Motion in Limine to Preclude Evidence or Argument at Trial Relating to Unproven Allegations by Third Parties (Document No. 307) is **DENIED without prejudice**.

16. The Chawla Defendants' Motion in Limine to Preclude Evidence by or About Eli Weinstein and Pine Projects' Untimely-Disclosed Expert Gilbert Rosenthal (Document No. 308) is **DENIED without prejudice**.

17. The Chawla Defendants' Motion in Limine to Preclude Evidence of Irrelevant and Unrelated Bad Acts of the Chawla Defendants (Document No. 309) is **DENIED without prejudice**.

18. The Chawla Defendants' Motion in Limine to Preclude Evidence Presented by Eli Weinstein and Pine Projects About Representations Not Included in Their Integrated Written Contract (Document No. 310) is **DENIED without prejudice**.

19. Plaintiff's Motion in Limine to Preclude Evidence of an Anti-Semitic Plot or Berger's Special Vulnerability Due to his Religion (Document No. 313) is **DENIED without prejudice**

20. The Chawla Defendants' Motion in Limine to Preclude Testimony by Expert Neil Sklaroff Concerning Matters that are Without Factual Foundation and Beyond the Scope of Expert Testimony (Document No. 314) is **DENIED without prejudice**.

21. The Chawla Defendants' Motion to Reopen Discovery and Continue Trial Should Chawla Defendants Not be Granted Summary Judgment (Document No. 298) is **DENIED as moot**.

        **BY THE COURT:**

        **Berle M. Schiller, J.**