**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BERISH BERGER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ELI WEINSTEIN, RAVINDER** | : | |
| **CHAWLA, 2040 MARKET** | : | |
| **ASSOCIATES, LP, JFK BLVD** | : | |
| **ACQUISITION PARTNERS, LP,** | : | |
| **MARK SAHAYA, PINE PROJECTS,** | : | |
| **LLC, WORLD ACQUISITION** | : | |
| **PARTNERS CORP.,** | : | **No. 07-994** |
| **Defendants.** | : | |

<u>**MEMORANDUM & ORDER**</u>

**Schiller, J.**                                                                           **August 26, 2008**

In the present civil action, Plaintiff Berish Berger brought claims against multiple
Defendants, alleging fraud, conversion, civil conspiracy, promissory estoppel, and unjust enrichment,
and seeking declaratory judgment. By Memorandum and Order dated August 6, 2008, this Court
dismissed all of Plaintiff's claims for lack of standing. In his Answer to Plaintiff's claims,
Defendant Eli Weinstein raised multiple crossclaims against other Defendants. Currently before the
Court is Crossclaim Plaintiff Weinstein's motion for summary judgment against JFK BLVD
Acquisition Partners, LP, ("JFK BLVD") seeking declaratory judgment, and JFK BLVD's motion
to strike Weinstein's motion for summary judgment. For the reasons discussed below, Weinstein's
motion is granted in part and JFK BLVD's motion is denied.

I.     **BACKGROUND**[1]

On May 12, 2006, JFK BLVD Acquisition GP, LLC (the sole general partner of Crossclaim

Defendant JFK BLVD) ("JFK BLVD GP") entered into an Agreement of Sale with R & F Penn

Center Associates, L.P. ("R&F Penn Center") to purchase certain properties known as the "River

City Properties," located on John F. Kennedy Boulevard in Philadelphia, Pennsylvania.[2]   (*See* CC

Pl.'s Statement of Undisputed Facts [hereinafter SOF] ¶ 1; Crossclaim Defendant's [hereinafter CC

Def.'s] Resp. to Def.'s SOF [hereinafter Resp. SOF] ¶ 1.)   The closing on the properties took place

on September 20, 2006.   (*See* Settlement Statement FR-08431.)   The Agreement of Sale set the

purchase price at $32.5 million.   (*See* R&F Penn Center and JFK BLVD Agreement of Sale ¶ 2

(WAP2128).)   However, according to the members of JFK BLVD, the value of the property greatly

exceeded this sale price, because of its development potential.   (CC Pl.'s Mot. Ex. B (Chawla Dep.)

at 13.)   In light of its valuation of the properties, JFK BLVD GP sought to purchase the property and

immediately resell it at a higher value.   (*Id.*)

In furtherance of this goal, on December 19, 2006, one day before the closing, JFK BLVD

entered into a Nominee Agreement with Weinstein.   (*See* Nominee Agreement Preamble.)   The

Agreement was multifaceted.   JFK BLVD would accept assignment of Agreement of Sale from its

general partner and receive title to the Properties; however, it accepted the title solely as "agent and

---

[1] The facts relevant to Weinstein's claim for declaratory judgment against JFK BLVD constitute but one sliver of a much larger and constantly unfolding story.  For the purposes of this opinion, the Court need only describe the subset of facts relevant to the transaction at hand.

[2] The properties, all located in Philadelphia, Pennsylvania, are: (1) 2001 John F. Kennedy Boulevard; (2) 2101 John F. Kennedy Boulevard; (3) 2201 John F. Kennedy Boulevard; (4) 2301 John F. Kennedy Boulevard; and (5) 60 North 23rd Street.  (*See* Crossclaim Plaintiff's [hereinafter CC Pl.'s] Mot. for Summ. J. [hereinafter Mot.] Ex. A (Dec. 19, 2006 Nominee Agreement [hereinafter Nominee Agreement]) Preamble).

nominee" of Defendant Weinstein.  (CC Pl.'s SOF ¶¶ 2-3; CC Def.'s Resp. SOF ¶¶ 2-3; *see also* Nominee Agreement ¶ 1 ("Nominee [JFK BLVD] shall be named the legal title holder for the benefit of Owner.").)

In exchange, Weinstein was to provide a $12 million deposit, which would be given to R&F Penn Center at the closing on the River City Properties.  (Nominee Agreement ¶ 2(a).)  Weinstein was also to provide all costs associated with the closing.  (*See* Nominee Agreement ¶¶ 2 & 2(c).) JFK BLVD was to obtain financing for the purchase of the property and was to guarantee any such loan; Weinstein, however, was responsible for paying any costs associated with the financing and for repayment of the loan.[3]  (*Id.* ¶ 2(b).)  The loan period was to be no shorter than two years, and during those two years only interest was to be repaid.  (*Id.*)  In order for Weinstein to acquire full legal title to the property, he was to pay the acquisition financing in full, or take over as guarantor of the loan.  (*Id.* ¶¶ 2(b), (d) & 3.)  In essence, the Nominee Agreement required Weinstein to provide the initial funding for the Properties, and then allotted at least two years for him to supply the remainder of the funds.  If, however, Weinstein defaulted on his obligations under the contract, JFK BLVD would retain full legal title to the property.

On the day of closing, Weinstein made the $12 million deposit.  (CC Pl.'s SOF ¶ 7; CC Def.'s Resp. SOF ¶ 7.)  Weinstein failed, however, to provide $2.8 million in closing costs.  (*See* CC Pl.'s Mot. Ex. C (June 20, 2007 Notice of Default) at 1.)  JFK BLVD supplied the outstanding funds and the parties closed on the River City Properties.  (CC Pl.'s Mot. Ex. B.) Although Weinstein

---

[3] Although the purchase price set forth in the Agreement of Sale between JFK BLVD GP and R&F Penn Center was only $32.5 million, the purchase price for Weinstein, as set forth in the December 19, 2006 Nominee Agreement, was $70 million.  (Nomation Agreement ¶ 2.)  The amount of acquisition financing contemplated in the Nominee Agreement was $52 million, an amount in excess of the entire JFK BLVD GP purchase price.

eventually repaid $1.5 million of the $2.8 million, JFK BLVD declared Weinstein in default of the

Nominee Agreement in a letter dated June 20, 2007.  The letter cited Weinstein's failure to provide

all of the necessary closing payments, to pay interest on the acquisition financing, and to resolve the

instant litigation.  (CC Pl.'s Mot. Ex. C.) JFK BLVD further stated "that the [Nominee] Agreement

is now formally terminated," and that it would retain all funds paid to JFK BLVD as liquidated

damages.  (*Id.*)

> The Nominee Agreement provides, regarding default:
>
>> If . . . all conditions precedent to Nominee's [JFK BLVD] obligation
>> to perform pursuant to the Contract [between R&F Penn Center and
>> JFK BLVD GP] have been satisfied, and if Closing pursuant to this
>> Nomination does not take place due to any failure of Owner
>> [Weinstein] to perform pursuant to this Nomination or Owner's
>> failure to supply sufficient funds on the date of Closing to complete
>> the purchase of the Property . . . Nominee shall retain such sums paid
>> by Owner . . . and Nominee principals or such other person or entity
>> as they designate shall become the absolute legal and equitable owner
>> of the Nominee and its general partners as liquidated damages and
>> this Nomination shall thereupon terminate.[4]

(Nominee Agreement ¶ 5(a).)   In his Answer to Plaintiff Berish Berger's Second Amended

Complaint, Defendant Weinstein levied a crossclaim against JFK BLVD, seeking declaratory

judgment that he is not in default of the Nominee Agreement, as that term is defined in the contract.

 (Weinstein's Answer Third Claim for Relief at 38.)  On July 15, 2008, Weinstein moved for

summary judgment as to this declaratory judgment claim.


## II.    STANDARD OF REVIEW

---

[4] The Nominee Agreement contemplates other events of default.  This provision, entitled
"Owner's Default," is the operative provision under consideration.

4

## A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Where the moving party bears the burden of proof at trial, at summary judgment, that party must identify those portions of the record that it believes illustrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party has met its burden, the non-moving party must offer admissible evidence that establishes a genuine issue of material fact that should proceed to trial.  *See id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

## B.  Declaratory Judgment

Pursuant to the Declaratory Judgment Act, a district court has the power to "declare the rights and other legal relations of any interested party seeking such delaration."  28 U.S.C. § 2201(a) (2008); *see also Borden v. Sch. Dist. of Twp. of. E. Brunswick*, 523 F.3d 153, 174 n.17 (3d Cir. 2007).  "Whether declaratory relief should be granted in an appropriate case is committed to the sound discretion of the trial court."  *Main Line Paving Co. v. Bd. of Educ., Sch. Dist. of Phila.*, 725 F. Supp. 1349, 1357 (E.D. Pa. 1989) (*citing Bituminous Coal Operator's Ass'n v. Int'l Union UMW*, 585 F.2d 586, 595-96 (3d Cir. 1978)).  In determining the appropriateness of declaratory relief, the district court may consider several factors, including whether a declaratory judgment will resolve

an uncertainty giving rise to a controversy, the convenience of the parties, the public interest, the availability of other remedies, judicial economy and the novelty of any questions of state law.  *See State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000)*; Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989) (citations omitted).

## III.    DISCUSSION

The Nominee Agreement is governed by Pennsylvania law.  (*See* Nominee Agreement ¶ 14(e); CC Pl.'s Mot. at 5 (citing Pennsylvania law); Pl.'s Resp. at 13-14 (same).)  Pursuant to Pennsylvania law, "'contract interpretation is a question of law that requires  a court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'"  *In re Old Summit Mfg.*, 523 F.3d 134, 137 (3d Cir. 2008) (*quoting Dep't of Transportation v. Pa. Indus. for the Blind and Handicapped*, 886 A.2d 706, 711 (Pa. Commw. 2005)).  A court should presume that the parties have crafted their language with care and due consideration.  *Id.*  The present motion rests solely on the definition of "Closing" within the parties' contract.

When the terms of a contract are clear and unambiguous, a court may look solely to the agreement itself to decipher its meaning.  *Crawford Central Sch. Dist. v. Commonwealth of Pa.*, 888 A.2d 616, 623 (Pa. 2005).  On the other hand, "'[a] contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.'"  *In re Old Summit Mfg.*, 523 F.3d at 137 (*quoting Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)).  In determining whether an ambiguity exists, a court may consider the language of the contract, alternate meanings as suggested by counsel, and the nature of the evidence being offered in support of that meaning.  *Bohler-Uddeholm America, Inc. v. Ellwood Grp,. Inc.*, 247 F.3d 79, 93

6

(3d Cir. 2001).

Not only are the terms of the Nominee Agreement clear, but also a straightforward application of that contract reveals that Weinstein is not in default.  Pursuant to the Nominee Agreement, Weinstein has committed an act of default if "*Closing pursuant to this Nomination does not take place* due to any failure of the Owner [Weinstein] to perform pursuant to this Nomination or Owner's failure to supply sufficient funds on the date of Closing to complete the purchase of the Property."  (Nominee Agreement ¶ 5(a) (emphasis added).)  Although the Nominee Agreement generally is not a beacon of clarity, the term "Closing"clearly refers to the  September 20, 2006 closing on the River City Properties – the event which occurred whereby both money and title to the River City Properties were transferred pursuant to the Agreement of Sale between JFK BLVD GP and R&F Penn Associates.  Multiple provisions of the contract support this reading of the term "Closing."  For example, Paragraph 2(a) of the Nominee Agreement, which relates to Weinstein's obligation to provide a $12 million deposit, states "The Escrow Agent is hereby irrevocably authorized to apply the Deposit to the purchase of the Property at Closing (*hereinafter defined*) thereon." (Nominee Agreement (emphasis added).)  "Property" is earlier defined as the River City Properties.  (*See* Nominee Agreement Preamble).  Here, therefore, "Closing" unequivocally refers to the September 20, 2006 event.

Paragraph 2(a) goes on: "The Deposit or any part thereof so paid shall be non-refundable except and unless Nominee [JFK BLVD] and/or the Contract Owner [R&F Penn Center] fail to deliver title to the Property *at Closing* as required by the Contract."  (Nominee Agreement ¶ 2(a) (emphasis added).)  The term "Contract" was earlier defined as "the Agreement of Sale dated May 12, 2006 . . . between R&F Penn Center Associates, LP . . . and JFK BLVD Acquisition GP, LLC."

Again, the "Closing" at issue cannot be construed as anything other than the closing on the properties.  In sum, the contract defines "Closing" relative to the "purchase of the Properties," and "as required by the Contract."  (*Id.*)  This is the consistent use of closing throughout the contract.  (*See, e.g., Id.* ¶¶ 2(c), 2(e), 5(a), 5(b), 5(c).)

With the understanding that "Closing" refers to the closing on the Properties, it becomes clear that Weinstein is not in default of the Nominee Agreement.  Pursuant to the default provision, Weinstein is only in default if "Closing pursuant to this Nomination does not take place."  The parties do not dispute that the closing on the properties did, in fact, occur.  Despite the fact that Weinstein failed to provide all the promised sums on the date of closing, JFK BLVD chose to supply the outstanding funds in order to complete the transaction. (CC Pl.'s Mot. for Summ. J. at 1.)  JFK BLVD's decision to supply extra funds to close on the real estate transaction instead of declaring Weinstein in default at that time *fore*closed its ability to subsequently declare Weinstein in default of the Nominee Agreement.

Crossclaim Defendant JFK BLVD's arguments to the contrary do not disturb this interpretation of the Nominee Agreement.  First, JFK BLVD argues that the term "Closing" as used in the default provision has a different meaning.  "Closing pursuant to this Nomination," argues JFK BLVD, refers to the execution of the Nominee Agreement, whereby Weinstein agreed to purchase the River City Properties from JFK BLVD.   Therefore, according to Crossclaim Defendant, "Closing pursuant to this Nomination" did not take place because Weinstein failed to pay the Closing costs.

This linguistic argument fails because, as discussed above, "Closing" clearly refers to the closing on the River City Properties, whereby title passed from R&F Penn Associates to JFK BLVD

8

GP and those parties consummated their transaction.  Nowhere does the Nominee Agreement ascribe an independent meaning to "Closing" when conjoined with "pursuant to this Nomination." Furthermore, in the very sentence that defines default, the word closing is once again used to refer to the Property closing.  (*See* Nominee Agreement ¶ 5(a) ("[I]f Closing pursuant to this Nomination does not take place due to any failure of Owner to perform pursuant to this Nomination or Owner's failure to supply sufficient funds *on the date of Closing to complete the purchase of the Property*.").) To ascribe two separate meanings to the word "Closing" in the same sentence would defy logic.  The contract is not reasonably susceptible to that interpretation.[5]

In addition to this language-based argument, JFK BLVD cites a lengthy list of Weinstein's alleged derelictions, and argues that each is tantamount to default.  (*See* Crossclaim Def.'s Mot. to Strike at 4.).  In addition to Weinstein's failure to pay the closing costs on the River City Properties, JFK BLVD cites: (1) Weinstein's failure to pay any expenses on the property for nearly one year; (2) Weinstein's failure to indemnify JFK BLVD in this litigation; (3) Weinstein's failure to take required actions in connection with the owner termination payment.

While the actions cited above may amount to breach of contract, an issue not currently before the Court, they do not amount to a "default" under the contract – a term that the parties defined, and to which the parties assigned specific liquidated damages.  JFK BLVD has not, as of the date of this

---

[5] JFK BLVD also cites Paragraph 2(e) of the contract which provides the phrase "[i]f closing is not completed by the Owner . . ."  JFK BLVD argues that this cannot mean closing on the properties, because the Owner (Weinstein) was not a party to that closing.  This, again, does not compel the Court.  The Nominee Agreement is rife with obligations incurred by Weinstein relative to the closing, not the least of which was Weinstein's responsibility to pay $12 million and all the costs related to the closing.  Accordingly, Weinstein's non-performance could result in a failure to close.

opinion, raised a breach of contract claim.[6]

Finally, JFK BLVD argues that Weinstein's motion for summary judgment should be struck as untimely.  In light of the fact that the trial date in this matter has been vacated, any untimeliness on the part of Weinstein is inconsequential and does not prejudice the opposing party.

Accordingly, because Weinstein is not in "default" of the Nominee Agreement, as that term is defined therein, and because issuing a declaratory judgment will resolve, in part, an uncertainty concerning the rights and legal relations of the parties and aid in the ultimate resolution of the claims between the parties, he is entitled to judgment declaring as much.  *See* 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (court's decision to issue declaratory judgment may turn on considerations of practicality and judicial administration); *see, e.g., Prudential Ins. Co. v. Prusky*, Civ. A. No. 04-0462, 2008 WL 859217 (E.D. Pa. Mar. 31, 2008) (declaring plaintiff did not breach contract); *Chase Manhattan Bank v. Twp. of Bensalem*, Civ. A. No. 96-6804, 1997 WL 330384 (E.D. Pa. June 5, 1997) (declaratory judgment as to parties fulfillment of contractual obligations).[7]

---

[6] One of Weinstein's alleged deficiencies *can* amount to a default under the Nominee Agreement, pursuant to a provision separated from that discussed above.  Under Paragraph 2(d)(i) of the Nominee Agreement, Weinstein's failure to give notice that he will pay a contractually defined "Nomination Termination Payment" amounts to default.  (Nominee Agreement ¶ 2(d)(i).)  However, Weinstein's obligation to pay the Nomination Termination Payment, if it arose at all, accrued after JFK BLVD declared that the Nominee Agreement was "fully terminated."  (CC Pl.'s Mot. Ex. C at 2.)  JFK BLVD cannot on one hand argue that Weinstein's obligations to the contract were terminated as of June 20, 2007 and simultaneously argue that he should be held in default for obligations arising after that date.

[7] Crossclaim Plaintiff Weinstein additionally requests a declaration that he "is entitled to complete his performance on the Nominee Agreement, with a thirteen month extension of time to perform his obligations under the agreement."  (*See* CC Pl.'s Proposed Order.)  The Court will deny Weinstein's request for this declaration.  Although Weinstein was not in default of the Nominee Agreement, it unclear from the record whether Weinstein is, in fact, entitled to

**IV.     CONCLUSION**

The Court will grant Crossclaim Plaintiff's motion for summary judgment and deny Crossclaim Defendant's motion to strike in accordance with the above.   An appropriate Order follows.

---

complete his performance, in light of his admitted failure to carry out certain obligations under the Nominee Agreement.  Given the ongoing litigation between these parties, the Court will exercise its discretion not to enter a declaratory judgment containing such terms.  *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) ("Because it has discretion to decline jurisdiction over a declaratory judgment action in its entirety, it follows that a court may decide some of the issues raised and refuse to rule on others."); *Main Line Paving Co.*, 725 F. Supp. at 1357 (E.D. Pa. 1989) ("Whether declaratory relief should be granted in an appropriate case is committed to the sound discretion of the trial court.") (internal citations omitted); *see also Terra Nova Ins. Co.*, 887 F.2d at 1224 (citing availability of other remedies as a judicial consideration in granting declaratory judgment).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERISH BERGER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ELI WEINSTEIN, RAVINDER** | : | |
| **CHAWLA, 2040 MARKET** | : | |
| **ASSOCIATES, LP, JFK BLVD** | : | |
| **ACQUISITION PARTNERS, LP,** | : | |
| **MARK SAHAYA, PINE PROJECTS,** | : | |
| **LLC, WORLD ACQUISITION** | : | |
| **PARTNERS CORP.,** | : | **No. 07-994** |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this **26th** day of **August**, **2008**, upon consideration of the following motions, the responses thereto, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Crossclaim Plaintiff Eli Weinstein's Motion for Partial Summary Judgment in the Form of Declaratory Judgment (Document No. 267) is **GRANTED in part** and **DENIED in part** as follows:

   a. Declaratory Judgment is entered as follows: "Eli Weinstein is not in default of Paragraph Five (5) of the Nominee Agreement dated December 19, 2006."

   b. Weinstein's request that the Court declare that Weinstein is entitled to Complete his performance with a thirteen month extension is denied.

2.      Crossclaim Defendant JFK BLVD Acquisition Partners, LP Motion to Strike

(Document No. 301) is **DENIED**.


**BY THE COURT:**

_____
**Berle M. Schiller, J.**